**UNITED STATES of America,**

v.

**Frank BAKER, Appellant.**

**No. 82–1086.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 6, 1982.

Decided Nov. 9, 1982.

---

David C. Venable, Washington, D.C. (appointed by this court), for appellant.

E. Anne McKinsey, Asst. U.S. Atty., with whom Stanley S. Harris, U.S. Atty., John A. Terry, Asst. U.S. Atty., Washington, D.C., at the time the brief was filed, and John R. Fisher and Deborah A. Robinson, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before TAMM, WILKEY, and SCALIA, Circuit Judges.

Opinion for the court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

Defendant was convicted of selling government property in violation of 18 U.S.C. § 641. He contends that the indictment was defective because it failed to charge that he knew that the property had been stolen from the United States and because it failed to charge that the sales were unlawful. He contends that mistakes made in the judge's instructions to the jury constituted plain error. He also contends that it was error to admit certain claim forms into evidence. We find merit only in defendant's last argument, and this evidentiary mistake was merely harmless error. Accordingly, we affirm.

On June 1, 1981, a United States Secret Service special agent assigned to undercover duty purchased two treasury checks in the amounts of $1,008 and $807 from defendant for $350. The next day the agent purchased treasury checks in the amounts of $10,000 and $1,008 from defendant for $1,000. The following day the agent purchased a treasury check in the amount of $10,000 from defendant for $500. By having each of the intended payees fill out and return Form 1133, the Secret Service confirmed that the payees did not receive the checks nor authorize anyone else to negotiate them. Defendant was indicted on September 3, 1981, on three counts of selling government property in violation of 18 U.S.C. § 641. After a jury trial on December 14 and 15, 1981, he was found guilty on all three counts and was sentenced to imprisonment for not less than two and not more than six years.

■ First, defendant argues that the indictment was fatally defective because it failed to charge that he knew that the checks had been stolen from the United States. Title 18 U.S.C. § 641 provides in pertinent part: "Whoever ... knowingly converts to his use or the use of another, or without authority, sells, conveys or disposes of any ... thing of value of the United States ... [s]hall be fined ... or imprisoned ...." Defendant relies solely on *Findley v. United States,* 362 F.2d 921 (10th Cir.1966), which held that an essential element of the offense of selling government property is "that the defendant knew that the property involved belonged to, and was stolen from, the government." *Id.* at 923. Defendant's reliance on *Findley* is improper because the case was overruled in *United States v. Speir,* 564 F.2d 934, 937–38 (10th

Cir.1977) (en banc), *cert. denied,* 435 U.S. 927, 98 S.Ct. 1495, 55 L.Ed.2d 521 (1978). The *Speir* court held that its prior decision in *Findley* "requiring knowledge of the jurisdictional facts cannot be sustained." *Id.* at 938. It is now well established that the statutory requirement that the stolen property belonging to the government merely furnishes the basis for federal jurisdiction and that defendant's knowledge of this jurisdictional fact is irrelevant. *See, e.g., United States v. Jermendy,* 544 F.2d 640, 641 (2d Cir.1976), *cert. denied,* 430 U.S. 909, 97 S.Ct. 1181, 51 L.Ed.2d 585 (1977); *United States v. Crutchley,* 502 F.2d 1195, 1201 (3d Cir.1974); *United States v. Smith,* 489 F.2d 1330, 1334 (7th Cir.1973), *cert. denied,* 416 U.S. 994, 94 S.Ct. 2407, 40 L.Ed.2d 773 (1974).

■ Second, defendant contends that the indictment was fatally defective because it failed to charge that the sale was unlawful. The indictment charged that defendant "willfully and knowingly did sell, convey, and dispose of without authority ... United States Treasury Checks, ... the same being property of the United States, said property having a value in excess of one hundred dollars." *See* Brief for Appellant at 6. Defendant relies upon *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952), and *United States v. Denmon,* 483 F.2d 1093 (8th Cir.1973). In *Morissette* the Supreme Court held that intent, although not mentioned in the statute defining theft and sale of government property, is nevertheless a necessary element of each offense. While not indicating that any specific language is necessary to allege intent, the Court did endorse "unlawfully, wilfully and knowingly" as sufficient. 342 U.S. at 270 n. 30, 72 S.Ct. at 253 n. 30. Following *Morissette,* the Eighth Circuit in *Denmon* held that an indictment charging simply that defendant had sold government property "without authority" is insufficient to allege intent. "[T]he failure of the indictment to charge that the defendant acted knowingly, unlawfully, and wilfully [was] fatally defective to the Government's prosecution of [the] indictment." 483 F.2d at 1095. Defendant Baker erroneously

maintains that the exact language of *Morissette* or *Denmon* must be employed in an indictment. "The point of both *Morissette* and *Denmon,* however, is that specific intent is a necessary element that must be alleged in the indictment; neither case required a particular verbal formula." *United States v. May,* 625 F.2d 186, 190 (8th Cir.1980). In the present case specific intent was clearly alleged in the indictment.

Third, defendant argues that the ambiguous and contradictory instructions given by the trial judge to the jury constituted plain error. Early in his charge to the jury, the judge stated, "If you find that the government has proven beyond a reasonable doubt every element of the offense with which the defendant is charged, then you may find him guilty." Supplemental Record (S.R.) at 166. He also read the indictment: "Frank Baker willfully and knowingly did sell, convey and dispose of without authority ... United States treasury checks, ... the same being property of the United States, said property having a value in excess of one hundred dollars." S.R. at 169. He repeated his earlier instruction concerning the importance of finding each element of the offense: "If the offense consists of two elements and the government proves one and you have some doubt about whether or not it has proved the other one, you must find the defendant not guilty." S.R. at 170–71. Nevertheless, when the judge listed the elements of the offense, he omitted that the act had to be done knowingly and willfully. S.R. at 171. After this omission was called to his attention, he attempted to correct the mistake: "[W]hoever *knowingly or without authority* sells, conveys or disposes of any ... property of the United States, shall be deemed to have violated the statute." S.R. at 174 (emphasis added). Unfortunately, he said "knowingly or without authority" rather than "knowingly and without authority." S.R. at 174. Earlier in the charge, he instructed, "[I]f you're satisfied that the government has established those elements of the offenses, as they're outlined in the indictment, beyond a reasonable doubt, *or any one of them,* you may

find the defendant guilty." S.R. at 171–72 (emphasis added). Defendant contends that the jury may have understood this instruction to mean that only one element of an offense need be proven beyond a reasonable doubt. After the judge completed the charge, defendant's counsel said he was satisfied with the court's instructions. S.R. at 178.

■ Rule 30 of the Federal Rules of Criminal Procedure provides that no party may assign as error an instruction to which he has not objected before the jury retires. A narrow exception to this rule is that plain errors affecting substantial rights may be noticed even though they were not brought to the court's attention. Fed.R.Crim.P. 52(b). "The Courts of Appeals long have recognized that the power granted them by Rule 52(b) is to be used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." *United States v. Frady,* 456 U.S. 152, 163, 102 S.Ct. 1584, 1592 n. 14, 71 L.Ed.2d 816 (1982). The plain error rule should be invoked only when the weakness of the evidence against defendant indicates that a serious injustice was done or when there are errors that "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *United States v. Brown,* 634 F.2d 819, 829 (5th Cir.1981) (quotation marks omitted); *see United States v. Giese,* 597 F.2d 1170, 1199 (9th Cir.), *cert. denied,* 444 U.S. 979, 100 S.Ct. 480, 62 L.Ed.2d 405 (1979); 3A C. Wright, *Federal Practice and Procedure: Criminal* 2d § 856 (1982).

■ There was no plain error in the present case. Defendant's assertion that the jury may have understood the instruction to mean that only one element of an offense need be proven beyond a reasonable doubt is unconvincing. Not only is this a most unlikely interpretation of the instruction, but also the judge on two other occasions clearly stated that every element of an offense must be proven beyond a reasonable doubt. S.R. at 166, 170–71.

■ Likewise, the judge's omission of the intent element of the offense and then,

when attempting to correct the mistake, stating "knowingly or without authority" rather than "knowingly and without authority" is not plain error. In considering claims of error, appellate courts must examine the instructions as a whole, not as isolated passages. *United States v. Martin,* 475 F.2d 943, 947 (D.C.Cir.1973). In his instructions to the jury, the judge read the indictment, which correctly stated the intent element. S.R. at 169. Also, he defined "knowingly" and "willfully" after listing the elements of the offense, which served to emphasize the necessity of specific intent. S.R. at 174. Most importantly, this is not a case where a miscarriage of justice occurred. The evidence against defendant was overwhelming. A Secret Service agent testified that he purchased the checks from defendant. S.R. at 56–58. Another agent testified that he observed some of the check transactions between defendant and the first agent. S.R. at 137–38. The government produced video and audio tapes of some of the transactions. S.R. at 60–61, 65. The government produced photographs of defendant and the first agent together at the locations where the sales occurred. S.R. at 84–85. Defendant contested the accuracy of none of this evidence and offered no evidence of his own. Thus, the mistake made in the instructions did not lead to a miscarriage of justice and did not affect the integrity or public reputation of judicial proceedings.

Fourth, defendant argues that it was error to receive Form 1133 into evidence and that the forms are the only evidence of his lack of authority to sell the checks, an essential element of the charge against him. A.T.F.S. Form 1133 is routinely sent to intended payees of government checks who the Treasury Department believes have not received their checks. The form inquires whether the payee received the check and whether he authorized anyone else to receive or negotiate it. The filing of the form facilitates the prompt issuance of a replacement check. Each of the intended payees of the checks sold by defendant completed Form 1133 and answered that he had not received his check and that he had not

authorized anyone else to receive it. These completed forms were admitted into evidence over the defense counsel's objection, S.R. at 89, 101–02, for the alleged purpose of proving that the payees submitted claim forms, S.R. at 92.

■ The forms, which were filled out by the intended payees and mailed back to the Treasury Department, are out-of-court statements offered to prove the truth of the matter asserted and, therefore, are hearsay under Federal Rule of Evidence 801(c). The forms are relevant only to prove that the payees did not receive the checks and did not authorize defendant to possess them, which is the matter asserted in the forms. Hearsay, of course, is inadmissible unless it falls within one of the exceptions to the rule. Fed.R.Evid. 802.

■ Contrary to the government's argument, the forms do not fall within the hearsay exception for records of regularly conducted activity. Federal Rule of Evidence 803(6) provides:

> (6) *Records of regularly conducted activity.* A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

The justification for this exception is that business records have a high degree of accuracy because the nation's business demands it, because the records are customarily checked for correctness, and because recordkeepers are trained in habits of precision. McCormick, *Evidence* § 306, at 720 (2d ed. 1972). Double hearsay exists when a business record is prepared by one employee from information supplied by another employee. If both the source and the recorder of the information, as well as every other participant in the chain producing the record, are acting in the regular course of business, the multiple hearsay is excused by Rule 803(6). However, if the source of the information is an outsider, Rule 803(6) does not, by itself, permit the admission of the business record. The outsider's statement must fall within another hearsay exception to be admissible because it does not have the presumption of accuracy that statements made during the regular course of business have. *See United States v. Davis,* 571 F.2d 1354 (5th Cir.1978); 4 D. Louisell & C. Mueller, *Federal Evidence* § 448 (1980); McCormick, *Evidence* § 310, at 725–26 (2d ed. 1972); 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(6) [04] (1981). In the present case, the intended payees were not acting in the regular course of business, and their statements do not fall within any other hearsay exception. Therefore, the forms are inadmissible hearsay.* If the issue were relevant, the forms would be admissible to show that they were in fact filed, which is in the firsthand knowledge of Treasury Department officials. But even if the filing of the forms were relevant, the forms would not be admissible to prove that the payees did not receive their checks. *See United States v. Tompkins,* 487 F.2d 146, 151 (8th Cir.1973).

■ Although admission of the claim forms was error, it was merely harmless error. Federal Rule of Criminal Procedure 52(a) provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." Perhaps the most influential statement of the test is in *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90

---

* The "litigation records" doctrine of *Palmer v. Hoffman,* 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1943), is not at issue because we find the claim forms to be inadmissible hearsay.

L.Ed. 1557 (1946): "The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand."

 The improper admission of the claim forms did not have a substantial influence on the jury. There was convincing evidence, other than the forms, that defendant did not have authority to sell the checks and that the checks were government property, which they remain at least until delivery to the payees, *United States v. Forcellati,* 610 F.2d 25, 30–32 (1st Cir.1979), *cert. denied,* 445 U.S. 944, 100 S.Ct. 1342, 63 L.Ed.2d 778 (1980). First, the undercover agent testified that defendant said that he had an associate working inside the government who had access to checks before they were mailed. S.R. at 56. Second, the undercover agent purchased checks worth $22,823 from defendant for $1,850. It is incredible that someone with the legal authority to sell or negotiate the checks would sell them for less than ten percent of their value. Third, that some of the checks had California addresses indicated to the agents that the checks were being stolen from the disbursing office prior to being mailed, rather than being stolen from the mail or after delivery. S.R. at 52–53. Erroneous admission of evidence is harmless if there is convincing, properly admitted evidence of all essential elements of the case. *See United States v. Cormier,* 639 F.2d 1177, 1183 (5th Cir.1981); 3A C. Wright, *Federal Practice and Procedure: Criminal* 2d § 854, at 311–13 (1982).

 A vital factor in deciding whether an error was harmful is the strength of the case against the defendant. *United States v. Whitaker,* 619 F.2d 1142, 1147 (5th Cir. 1980). An error is more easily excused if the evidence of the defendant's guilt is overwhelming. *Lutwak v. United States,* 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953); 3A C. Wright, *Federal Practice and Procedure: Criminal* 2d § 854, at 306–07 (1982). In the present case, the evidence against defendant was indeed overwhelming. A Secret Service agent testified that he purchased the checks from defendant. Another agent testified that he observed some of the check transactions. The government produced video and audio tapes of some of the transactions and photographs of defendant and the first agent together. Defendant did not seek to refute the government's evidence of lack of authority. Thus, the admission of the forms was harmless error.

Defendant's arguments that the indictment was defective and that plain error was committed in the jury instructions are unconvincing. Although he correctly asserts that it was error to admit the claim forms into evidence, it was merely harmless error. Accordingly, the judgment of the district court is

*Affirmed.*